CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

No. 18-2525

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHA EATMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17 CR 00119 — **Virginia M. Kendall**, *Judge.*

ARGUED SEPTEMBER 16, 2019 — DECIDED NOVEMBER 1, 2019

Before BAUER, BRENNAN, and ST. EVE, *Circuit Judges.*

BAUER, *Circuit Judge.* After a heated argument with his girlfriend, Micha Eatman found himself pounding on her apartment door and yelling to be let inside. Chicago police officers arrived in response to a 911 call and, within moments, they frisked Eatman, seized a loaded handgun, and placed him in handcuffs. Officers then asked Eatman to produce the gun's

Case: 1:17-cr-00119 Document #: 70 Filed: 11/25/19 Page 2 of 9 PageID #:609
Case: 18-2525     Document: 00713525298     Filed: 11/25/2019     Pages: 9

2                                                              No. 18-2525

registration. The officers also spoke to his girlfriend, who refused to sign a police complaint. They then took Eatman to the police station, where a background check revealed two prior felony convictions. Eatman was turned over to federal authorities and indicted for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Eatman moved to suppress the gun, arguing that he was searched without reasonable suspicion of criminal activity and arrested without probable cause since, at the time he was handcuffed, the officers did not know that he possessed the gun unlawfully. The district court denied the motion, finding that the officers had reasonable suspicion when they found Eatman attempting to gain access to the apartment and that the officers arrested Eatman only after inquiring whether he had registration for the gun. Eatman entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

On appeal, Eatman concedes the police officers had reasonable suspicion to conduct a frisk but argues he was arrested without probable cause when he was handcuffed and thus his felon status should be suppressed. Because we find the use of handcuffs on Eatman to be reasonable, we affirm.

## I. BACKGROUND

On August 19, 2016, at 5:09 a.m., the Chicago Police Department received a call from a security guard reporting a domestic disturbance at an apartment building located at 6425 South Lowe Avenue in the Englewood neighborhood of Chicago. Just moments before, a tenant of the building called security to report that her boyfriend had hit her and was trying

No. 18-2525 3

to gain access to her apartment. The 911 call led to the dispatch of two Chicago Police units, each receiving this message:

> "security officer brooks states m/b mikah beating f/b trinidad 2 children in the apartment no drinking/no drugs cs possibly may have gun cs she is req. more than 1 unit. cs he may try to leave building,. nfi"

The 911 call reported more specific information, for instance that there was likely a gun involved but a question as to whether Eatman or his girlfriend had the gun. The security guard did not say Eatman beat his girlfriend, but responded "yes" when the dispatcher asked if Eatman "touched" her. Both units received the message in their patrol cars' computer system in the minutes prior to arrival.

Four police officers entered the building and briefly spoke with security guards before being escorted to the 19th floor. According to the two officers who testified at the suppression hearing, the guard escorting them upstairs reiterated that Eatman may have a gun. As they exited the elevator, the security guard directed the officers towards the apartment; the four officers observed Eatman pounding on the door and yelling to be let inside.

Once the officers approached Eatman, they told him to back away from the door and put his hands on the wall. Officer Alvarez frisked Eatman and found a loaded handgun tucked into his waistband. Alvarez placed the gun into his pocket and handcuffed Eatman with Officer Rangel's assistance.

The exact timing of what transpired after Eatman's handcuffing is unclear, but otherwise the factual record is undisputed. Eatman's girlfriend emerged from the apartment and spoke with the officers. According to the officers, she was more concerned about $300 that she wanted from Eatman; she ultimately refused to sign a criminal complaint against Eatman. The officers asked Eatman if he had a Firearm Owners Identification card or a conceal-and-carry license. Although neither Rangel nor Alvarez testified as to how Eatman responded, their interviews with the United States Attorney's Office and the district court record show that Eatman claimed the gun was his girlfriend's and that he took it to keep the gun away from the children.

The officers then transported Eatman to the police station, where a background check revealed his prior felony convictions. Eatman was read his *Miranda* rights at 8:17 a.m. and then admitted to having knowingly possessed the gun. Eatman was turned over to federal authorities and charged with one count for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).

Eatman filed a motion to suppress the gun, arguing that the officers lacked reasonable suspicion to perform a frisk and they had arrested Eatman without probable cause when they handcuffed him without knowing whether he could lawfully possess the gun. At the suppression hearing, Officers Rangel and Alvarez both testified that they had experience with domestic disturbances and considered the apartment building to be located in a high-crime area.

No. 18-2525                                                                 5

The district court denied the motion to suppress and wrote an order the next day. Having found the officers' testimony to be credible, the court held that the officers had reasonable suspicion to frisk Eatman and handcuff him for security reasons and that, after asking Eatman for registration, they had probable cause to arrest him for possessing a firearm in violation of Illinois law. The district court added that the officers arguably had probable cause to arrest Eatman for other crimes as well, including disturbing the peace, the alleged domestic incident, and the alleged theft. Accordingly, the court denied the motion.

## II. DISCUSSION

On appeal, Eatman does not dispute the district court's determination that the officers had reasonable suspicion to conduct a frisk, but renews the argument that he was arrested upon being handcuffed and, at that moment, the officers lacked probable cause. Eatman argues that since his prior convictions were only discovered as a result of this illegal arrest, his felon status should be suppressed. In reviewing the district court's denial of a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*. *United States v. Stewart*, 902 F.3d 664, 672 (7th Cir. 2018).

The instant case and our affirmation of the district court's ruling is best understood as part of the progeny of *Glenna*, which holds that police officers may use reasonable means to effectuate an investigatory stop, including but not limited to the use of handcuffs. *United States v. Glenna*, 878 F.2d 967 (7th Cir. 1989); *United States v. Smith*, 3 F.3d 1088 (7th Cir. 1993); *United States v. Bullock*, 632 F.3d 1004 (7th Cir. 2011). After the

6                                                                  No. 18-2525

Supreme Court's ruling in *Terry v. Ohio*, 392 U.S. 1 (1968), which recognized an exception to the requirement that Fourth Amendment seizures of persons must be based on probable cause, the circuit courts have consistently authorized the use of handcuffs so long as their use was a "reasonably graduated response to the demands of the situation[.]" *Glenna*, 878 F.2d at 972; *see United States v. Kapperman*, 764 F.2d 786 (11th Cir. 1985); *United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983). Specifically, "in evaluating the reasonableness of an investigative stop, we examine first whether the officers' action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Glenna*, 878 F.2d at 971. To the extent that Eatman argues that his handcuffing was necessarily an arrest, his argument goes against established precedent. *Rabin v. Flynn*, 725 F.3d 628, 635 (7th Cir. 2013) (stating that, "given the safety risks at stake, it was reasonable under clearly established law for the officers to temporarily detain Rabin pending the verification of his gun carry license").

First, Eatman does not dispute the district court's finding that the officers had reasonable suspicion to initiate the investigatory *Terry* stop. As the district court determined, Eatman was found engaging in the exact conduct that the complaint alleged: "[t]he security officers directed the police officers to the location of the caller and when they arrived on the scene outside the exact apartment, they observed the exact behavior described to them and conveyed to them by both the dispatcher and the security officers." The police officers received credible information that Eatman had just harmed his girlfriend and may have a gun. The district court judge found

No. 18-2525                                                                 7

"[the officers'] testimony was not impeached on cross examination and was credible."

Eatman's argument relies on finding that his handcuffing was an arrest or *de facto* arrest and without probable cause since the officers only asked him about the Firearm Owner Identification card and conceal-and-carry license after the handcuffing. The parties and the district court agreed that probable cause turned on a question that the officers asked Eatman while he was undoubtedly in police custody. *Smith*, 3 F.3d at 1097–98 (citing *New York v. Quarles*, 467 U.S. 649, 655 (1984)). However, as in *Glenna* where police officers asked for consent to search a car for registration papers, this question alone is not a custodial interrogation since it is not designed to nor likely to elicit testimonial evidence. *Glenna*, 878 F.2d at 972.

The district court specifically found that the officers "searched and handcuffed [Eatman] based on the need to secure the situation and for the safety of all involved including the responding officers." Eatman does not argue that this finding was clearly erroneous but instead asks this court to find that the use of handcuffs was unreasonable because his gun had already been seized, he had not acted violently toward the police, and because the four officers outnumbered him in the hallway while his girlfriend was locked inside the apartment. This request asks this court to substitute our judgment for the police officers' legitimate concerns, a request we will not entertain.

The dispatch to the police officers reported that Eatman had committed battery against his girlfriend, that he may have a gun, and that he could try to escape. Moreover, this informa-

tion came from a security guard who explicitly requested two units. When the officers frisked Eatman, they found a gun that further corroborated the information they had received. Whether or not the officers had probable cause to arrest him for the battery or disturbing the peace, they had reason to believe he may be combative or try to escape. The officers decided the best way to control the volatile situation was to handcuff Eatman and remove him from the door so they could speak to the girlfriend. The officers' experiences in conjunction with the information presented to them made the use of handcuffs reasonable in relation to the gravity of the situation.

Upon handcuffing Eatman, they spoke to both him and his girlfriend in order to determine whether he committed any crime. Although the record is unclear as to the exact time the officers inquired about Eatman's gun registration, the district court determined this occurred shortly after he was handcuffed. In this case, the district court properly determined that the use of handcuffs was not an arrest but rather a method to de-escalate the situation and allow the officers to investigate.

Finally, we agree with the district court that the officers likely had probable cause to arrest Eatman for either the domestic battery or disturbing the peace. This court's precedent suggests the officers had probable cause for the domestic battery based on the information provided by the security guards and the fact they found Eatman trying to enter the apartment. *Sheik-Abdi v. McClellan*, 37 F.3d 1240 (7th Cir. 1994) (holding officers had probable cause to arrest for domestic battery based on the report of a paramedic); *United States v. Tilmon*, 19 F.3d 1221 (7th Cir. 1994) (holding officers had probable cause when the suspect matched the description of

the robber of a nearby bank). With regard to disturbing the peace, Eatman was found yelling and pounding on his girlfriend's apartment door in the early morning, which led his girlfriend to contact the security guards; therefore, the officers likely had probable cause to arrest him for that crime as well.

### III. CONCLUSION

We conclude that the district court did not err in its denial of Eatman's motion to suppress when it decided that the officer's decision to handcuff Eatman was a reasonable means to effectuate the investigatory stop. The judgment of the district court is AFFIRMED.